**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
JONATHAN D.  USLANER (Bar No.  256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

*Counsel for Plaintiff Southeastern Pennsylvania
Transportation Authority*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, on behalf of itself and all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>PORTOLA PHARMACEUTICALS, INC., SCOTT GARLAND, MARDI C. DIER, SHELDON KOENIG, HOLLINGS C. RENTON, JEFFREY W. BIRD, LAURA BREGE, DENNIS FENTON, JOHN H. JOHNSON, DAVID C. STUMP, and H. WARD WOLFF,<br><br>                Defendants. | Case No. 3:20-cv-01501<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Southeastern Pennsylvania Transportation Authority ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (i) regulatory filings made by Portola Pharmaceuticals, Inc. ("Portola" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued by and disseminated by the Company; (iii) analyst and media reports concerning Portola; and (iv) other public information regarding the Company.

## I.     **INTRODUCTION**

1.     This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired shares of Portola's common stock between January 8, 2019 and February 26, 2020, inclusive (the "Class Period").  The claims asserted herein are alleged against Portola, certain of the Company's officers, and members of Portola's Board of Directors, including the Directors that signed the Registration Statement for the Offering (defined below) (collectively, "Defendants") and arise under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.     Portola is a biopharmaceutical company that develops and commercializes treatments for thrombosis, other hematologic disorders, and inflammation.  Its lead product is Andexxa, marketed as Ondexxya in Europe.  Andexxa is for patients treated with rivaroxaban or apixaban, when anticoagulation needs to be reversed due to life-threatening or uncontrolled bleeding.

3.     During the Class Period, Portola misleadingly touted Andexxa's revenues and future prospects, calling it one of the most successful drug launches in history, touting the "deepening utilization" and increasing reorder rates of the drug based on the Company's usage tracking metrics, and hailing the Company's purportedly exceptional execution on the Andexxa launch as the catalyst for continued robust revenue growth.  Portola's materially false and misleading statements and omissions inflated the price of Portola stock.

4.      In addition, on August 7, 2019, the Company filed a Registration Statement and Prospectus on Form S-3 ("Registration Statement").  On August 12, 2019, Portola announced plans to offer its common stock in a public offering (the "Offering").  The next day, Portola announced the Offering of 8,035,715 shares of its common stock to the public at a price of $28.00 per share. In addition, Portola granted the Offering's underwriters a thirty-day option to purchase up to an additional 1,205,357 shares from the Company at the Offering price.  In total, the Offering raised gross proceeds of over $250 million for the Company.  As part of the Offering, the Company filed on August 14, 2019, a Prospectus Supplement on Form 424(b)(5) ("Prospectus" and with the Registration Statement, collectively the "Offering Materials").  The Offering Materials contained and incorporated by reference false and misleading statements about the success of the Andexxa launch.

5.      While Portola emphasized "strong demand for Andexxa," "deepening utilization within existing accounts" at hospitals, and broad usage for the drug in a variety of medical situations, in reality the opposite was true.  The Company knowingly concealed from investors that the "strong demand" for Andexxa simply did not exist.  Andexxa's astronomically high wholesale price of up to $49,500 per dose prevented many of Portola's clients from adopting the drug.  Consequently, a number of Portola's first Andexxa customers—hospitals that had received the drug as early as May 2018 as part of an initial trial launch—had drastically curtailed use of Andexxa following drug utilization reviews.

6.      On January 9, 2020, Portola announced global net revenues for Andexxa of $28 million for the fourth quarter of 2019, falling drastically short of analysts' consensus estimate of $41 million.  Portola executives admitted that Andexxa demand had flattened due to utilization reviews and budget scrutiny among the early adopter hospitals, with later adopting customers still to perform similar utilization determinations.  In addition, the Company disclosed that it was taking a substantial charge of $5 million for unused and returned Andexxa product previously recognized as revenue and incorporated into Portola's revenue growth numbers.  On this news, the Company's share price plummeted by $9.98 per share, or approximately 40%, to close at $14.76 per share on January 10, 2020.

---

7.     Then, on February 26, 2020, after the close of market, Portola reported an outsized fourth-quarter 2019 loss of $96.7 million, or a loss of $1.24 per share, falling far short of analyst estimates of a loss of $0.88 per share.  The Company disclosed that the loss encompassed a $27.5 million charge arising from its decision to discontinue operations related to Bevyxxa, a secondary product of the Company.  On a conference call held that day, Defendant Garland revealed that the Company was forced to cease Bevyxxa commercialization efforts and undertake an internal restructuring to focus its efforts on righting the ship with respect to its primary product, Andexxa. On this news, Portola's share price fell $2.35 per share to close at $10.17 per share on February 27, 2020, an approximately 19% decline.

8.     As a result of Portola's false and misleading statements and omissions, and the resulting decline in the market value of the Company's common stock when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## II.     JURISDICTION AND VENUE

9.     The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. §§ 1391(b), (c), and (d).  Portola maintains its headquarters in South San Francisco, California, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

### III. **PARTIES**

11.     Plaintiff is an institutional investor based in Philadelphia, Pennsylvania that manages assets on behalf of participants in Plaintiff's five single-employer, defined benefit pension plans for all non-regional-rail-union employees in Southeastern Pennsylvania.   As indicated on the certification submitted herewith, Plaintiff purchased Portola common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

12.     Defendant Portola is incorporated under the laws of Delaware with its principal executive offices located in South San Francisco, California.  The Company is the issuer of the common stock sold in the Offering.  Portola's common stock trades on the NASDAQ exchange under the symbol "PTLA."  As of November 1, 2019, Portola had over 77 million shares of common stock outstanding.

13.     Defendant Scott Garland ("Garland") is, and was at all relevant times, the Chief Executive Officer ("CEO") and President of the Company, as well as a Director of Portola. Defendant Garland signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

14.     Defendant Mardi C. Dier ("Dier") is, and was at all relevant times, an Executive Vice President and the Chief Financial Officer ("CFO") of the Company.  Defendant Dier signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

15.     Defendant Sheldon Koenig ("Koenig") is, and was at all relevant times, an Executive Vice President and the Chief Commercial Officer of the Company.

16.     Defendants Garland, Dier, and Koenig (collectively the "Officer Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Officer Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent

their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Officer Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Officer Defendants are liable for the false and/or misleading statements pleaded herein.

17.     Defendant Hollings C. Renton ("Renton") is, and was at all relevant times, Chairman of the Board of Directors of Portola.  Defendant Renton signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

18.     Defendant Jeffrey W. Bird ("Bird") is, and was at all relevant times, a Director of Portola.  Defendant Bird signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

19.     Defendant Laura Brege ("Brege") is, and was at all relevant times, a Director of Portola.  Defendant Brege signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

20.     Defendant Dennis Fenton ("Fenton") is, and was at all relevant times, a Director of Portola.  Defendant Fenton signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

21.     Defendant John H. Johnson ("Johnson") is, and was at all relevant times, a Director of Portola.  Defendant Johnson signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

22.     Defendant David C. Stump ("Stump") is, and was at all relevant times, a Director of Portola.  Defendant Stump signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

23.     Defendant H. Ward Wolff ("Wolff") is, and was at all relevant times, a Director of Portola.  Defendant Wolff signed the Registration Statement and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

24.     Defendants Garland, Dier, Renton, Bird, Brege, Fenton, Johnson, Stump, and Wolff

are collectively referred to hereinafter as the "Offering Defendants."   Each of the Offering Defendants signed the Registration Statement.   In addition, as Directors and/or executive officers of the Company, the Offering Defendants participated in the solicitation and sale of Portola shares to investors in the Offering for their own benefit and the benefit of Portola.   The Offering Defendants, because of their positions with Portola, possessed the power and authority to control the contents of the Offering Materials.

## IV.   BACKGROUND

25.   Portola is a biopharmaceutical company that develops and commercializes treatments for thrombosis and other hematologic diseases.

26.   Portola's lead drug is Andexxa.   Andexxa prevents two kinds of blood thinners, apixaban and rivaroxaban, from inhibiting Factor Xa, thereby restoring a patient's clotting ability—a critical application of which is when reversal of anticoagulation is needed due to life-threatening or uncontrolled bleeding.   Andexxa's wholesale prices range from $25,000 to $50,000 per dose.   It gained FDA approval for a limited launch in May 2018.   Expected to be a blockbuster drug for Portola, Andexxa comprises nearly 100% of the Company's revenues and is vital to the Company's financial performance and future business prospects.

27.   While Andexxa is the only FDA-approved drug of its kind, older and cheaper alternative treatments exist to treat severe bleeds in patients taking anti-coagulants.   Moreover, other blood thinners besides apixaban and rivaroxaban are in use, the effects of which Andexxa does not reverse.

28.   In May 2018, Portola began early sales of Andexxa to select early adopter "Tier 1" hospitals, also referred to as "Early Supply Program" ("ESP") accounts, priced at $27,500 per dose.

## V.   DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

29.   The Class Period begins on January 8, 2019, when Portola gave an investor presentation announcing the broad commercial launch of Andexxa.   The Company reported that following the FDA approval of the second-generation manufacturing process on December 31,

2018, the Company had officially begun shipping Andexxa to specialty distributors, which would supply hospitals in the expanded commercial launch in the United States.  Defendant Garland told investors about the positive outlook of the broad commercial launch of Andexxa.  Defendant Garland reported that since Andexxa first began shipping to select hospitals at the end of May 2018 through the ESP, Portola had stocked 200 hospitals, doubling the number of sites that it had begun stocking in the previous quarter.  Critically, Defendant Garland also told investors that Portola had seen its reorder rate improve such that the percentage of accounts that had reordered was at 50% as of December 31, 2018.  "What I can say today and what we said on our Q3 call is that we're very encouraged with the reorder rate that we're seeing, and we believe it's truly reflective of pull-through demand.  Not just stocking, but real pull-through demand."

30.     In addition, Portola's Vice President of Business Development Jeet Mahal stated on the call, "[I]n terms of the performance of the [ESP], . . . what we have seen and I think we're encouraged by, is what we expect, which is a time frame for these hospitals who want their stock to get activated, and that can range 3 or 4, 5, 6 months, really depends on the institution.  Many of the earliest institutions were the largest academic centers, so they have a lot of processes and protocols.  But once they get going, they get going on a regular basis, and that's what we're really encouraged by."

31.     In the presentation materials, which the Company also filed with the SEC on Form 8-K that day, Portola stated, "Andexxa Demand is Strong and Growing."

32.     On May 8, 2019, the Company issued a press release, also filed on Form 8-K with the SEC, announcing its financial results for the first quarter ended March 31, 2019.  The Company reported total revenues of $22.2 million for the first quarter of 2019, compared to $6.6 million for the first quarter of 2018.  Total first quarter revenues included $20.3 million in net product revenues from Andexxa sales, or 45% more than the previous quarter.  In the Company's earnings release, Defendant Garland was quoted as saying, "[O]ur first quarter results continue to reflect strong demand for Andexxa, as well as focused execution on our commercial launch."

33.     Later that day, the Company conducted an earnings call where Defendant Koenig represented that the majority of the Company's 300 hospital customers had made their pharmacy

1   and therapeutics ("P&T") determinations—a shorthand reference to hospitals' policies regarding

2   the utilization of drugs, therapies, and drug-related products and identifying those that are most

3   cost-effective and medically appropriate for the hospital's patient population (also known as a

4   "formulary system").   Specifically, Defendant Koenig told investors that "[t]he majority of

5   hospitals have made P&T decisions.  So the majority of them have the product on the protocol and

6   are using the product.  As we mentioned earlier, happy with the rate of reorder rates that we are

7   currently seeing."

8          34.     In addition, on the earnings call, Defendant Koenig said the "daily demand [for

9   Andexxa] continue[s] to grow" and "hospitals will continue to come online at a rate that is

10  approximately consistent with what we have seen in the last few quarters."  Defendant Koenig

11  added that the "reorder rates are really reflecting true pull through and underlying demand."

12  Accordingly, Defendant Garland underscored that he was "actually very, very pleased with the

13  uptake of Andexxa so far" and "expected that the current trajectory should continue at a linear

14  rate" with respect to revenues, as the "utilization on a per hospital level [] deepen[s] both as

15  physicians get used to the product and as hospitals continue to go through their protocol

16  development[.]"

17         35.     Also on May 8, 2019, the Company filed a quarterly report on Form 10-Q with the

18  SEC for the period ended March 31, 2019 ("Q1 2019 10-Q").  The Q1 2019 10-Q was signed by

19  Defendants Garland and Dier and contained signed certifications pursuant to the Sarbanes-Oxley

20  Act of 2002 ("SOX") by Defendants Garland and Dier.

21         36.     The Company stated in the Q1 2019 10-Q:

22         As of March 31, 2019, we maintain a reserve of $6.6 million for excess and
           obsolescence inventories. We recorded a related charge to cost of sales of $3.9
23         million during the three months ended March 31, 2019. In developing the estimate
           for inventory reserve, we used estimates of demand. If it is determined that
24         inventory utilization will further diminish based on estimates of demand, additional
           inventory write-downs may be required.
25

26         37.     In the Q1 2019 10-Q, the Company represented that Portola's operations "may be

27  affected by a variety of factors, including the level of demand and market acceptance," and that

28  the Company's success depended on the "degree of market acceptance," "the willingness of

physicians and healthcare organizations to change their current treatment practices" and "the willingness of hospitals and hospital systems to include our products as treatment options."

38.     On June 6, 2019, Defendant Garland participated in the William Blair Growth Stock Conference where he said that "the reorder rate" for Andexxa, the rate for "hospitals that actually order a second or third or fourth time, is now moved up to 55%, we went from 50% in Q4, to 55% in Q1 of 2019."

39.     On June 11, 2019, Defendant Garland participated in the Goldman Sachs Global Healthcare Conference.  Defendant Garland told the attendees that the Company "track[s] the number of accounts that have ordered at least once," stressed that on a quarter-on-quarter basis, Portola had "about 100 new hospitals ordering each quarter," and touted that there was "enough data to feel very confident in both the short and the long-term trajectory of Andexxa."

40.     On August 7, 2019, Portola issued a press release announcing its financial results for the second quarter ended June 30, 2019, which it also filed on Form 8-K with the SEC.  The Company reported that Andexxa net product revenues grew to $27.1 million of the Company's total revenue in the quarter of $28.4 million, compared to only $4 million in total revenue during the same period for the prior year.  In the Company's earnings release, Defendant Garland was quoted as saying, "This is our fifth consecutive quarter of strong revenue growth reflecting our exceptional launch execution and continued demand for Andexxa."

41.     During the earnings call later in the day, Defendant Koenig said that in order to continue to optimize its targeting efforts, the Company was "deepening utilization within existing accounts" and that it was "seeing encouraging trends."  Defendant Garland also said that there was "continued strength in demand for Andexxa" as "74% of our sales in the quarter came from reorders, reflecting real pull-through and increasing use in patients."

42.     Similarly, Defendant Garland told investors on the call that Andexxa was "one of the top five hospital drug launches over the last 30 years.  We are clearly off to a fantastic start." In addition, Defendant Garland said that Portola tracked the type of usage of Andexxa by hospitals as a metric of deepening utilization, saying, "We do track that.  We do track it with a chart [or poll]. What we have said in the past and what's very encouraging is that we are definitely seeing

usage in patients outside of the intracranial hemorrhage space."  Later on the call, Defendant

Garland said, "What we are seeing, as we've looked at a cohort of our institutions, large important

institutions that came on earlier at [ESP], and actually what we're seeing is increased usage over

time or deepening usage over time.  There's nothing that we're seeing today that makes us

concerned about a lack of pull-through or a plateauing of our utilization."  Defendant Garland also

reaffirmed, "[W]e're really happy with what we're seeing, both in terms of new account adds as

well as deepening of the utilization."

43.     Also on August 7, 2019, the Company filed a quarterly report on Form 10-Q for

the quarter ended June 30, 2019 ("Q2 2019 10-Q"), affirming the previously reported financial

results.  The Q2 2019 10-Q was signed by Defendants Garland and Dier and contained signed

certifications pursuant to SOX by Defendants Garland and Dier.

44.     The Company represented in the Q2 2019 10-Q:

> We recorded an excess and obsolescence inventory charge to cost of sales of $ 3.8 million
> during the six months ended June 30, 2019. In developing the estimate for inventory
> reserve, we used estimates of demand compared to shelf life. If it is determined that
> inventory utilization will further diminish based on estimates of demand, additional
> inventory write-downs may be required.

45.     The Q2 2019 10-Q represented that Portola's operations "may be affected by a

variety of factors, including the level of demand and market acceptance," and that the Company's

success depended on the "degree of market acceptance" and "the willingness of physicians and

healthcare organizations to change their current treatment practices" and "the willingness of

hospitals and hospital systems to include our products as treatment options."

46.     On August 7, 2019, the Company filed a Registration Statement on Form S-3.  On

August 12, 2019, Portola announced plans to offer its common stock in the Offering.  The next

day, Portola announced the pricing of 8,035,715 shares of its common stock at a price to the public

of $28.00 per share.  In addition, Portola granted the Offering's underwriters a thirty-day option

to purchase up to an additional 1,205,357 shares from the Company at the Offering price.  In total,

the Offering raised gross proceeds of over $250 million for the Company.

47.     The Offering Materials were signed by, among others, Defendants Garland and

Dier.  The Offering Materials stated, "Andexxa is tracking with the most successful among 45

other acute care hospital drugs launched in the past 30 years based on average quarterly sales for the first four full quarters of launch."  The Offering Materials incorporated by reference certain risk disclosures from the Company's SEC filings, including the Annual Report on Form 10-K for the year ended December 31, 2018, and Quarterly Reports on Form 10-Q for the quarters ended March 31, 2019 and June 30, 2019, which warned that Portola's operations "may be affected by a variety of factors, including the level of demand and market acceptance," and that the Company's success depended on the "degree of market acceptance" and "the willingness of physicians and healthcare organizations to change their current treatment practices" and "the willingness of hospitals and hospital systems to include our products as treatment options."

48.     On September 10, 2019, at the Morgan Stanley Global Healthcare Conference, Defendant Garland assured investors of Andexxa's "broad utilization" and emphasized that Portola was hearing "from our physicians . . . a lot of enthusiasm for the drug, high unmet medical need, very limited treatment options and a very large and growing problem that is urgent and life-threatening."  To bolster his assertion of Andexxa's "broad utilization," Defendant Garland cited internal metrics on the increasing number of hospitals making their first, second, and third purchases of Andexxa; a "regular chart audit" of hospital records for patients who have been given Andexxa; and an internal benchmark analysis purportedly ranking Andexxa "in the top five" of 45-or-so comparable drug launches in the past 30 years.  Defendant Garland said that all of this "gives a really positive picture about the future projections of this drug, both in short and long term."

49.     On November 5, 2019, Portola issued a press release, also filed on Form 8-K with the SEC, announcing its financial results for the third quarter ended September 30, 2019 where it reported total global revenues of $36.8 million, compared to $14.2 million for the third quarter of 2018.  Total global revenues included $35.7 million in net product revenues from sales of Andexxa/Ondexxya.  In the release, Defendant Garland was quoted as saying that the Company had "delivered another quarter of strong Andexxa revenue in the U.S." and that the "use of Factor Xa inhibitors in both markets continues to grow, driving the underlying market opportunity for Andexxa/Ondexxya and long-term value of Portola."  The Company also filed the Quarterly

Report on Form 10-Q for the quarter ended September 30, 2019 ("Q3 2019 10-Q"), which again stated (as previous quarterly reports had), "We are engaged in ongoing negotiations with hospitals and third-party payors regarding coverage, reimbursement and formulary placement."

50.     Later that day, the Company conducted an earnings call where Defendant Garland stated that Portola, "remain[s] confident in our ability to build long-term growth and value" and that "the demand for Andexxa is strong" because of continued execution on Andexxa's launch, the rapid growth of the Factor Xa inhibitor market, and Portola's success in establishing Andexxa as "the standard of care. Defendant Garland further represented, "our revenue is being driven by new customer additions and positive utilization trends" and added, "utilization per hospital per month . . . has been staying consistent in 2019."

51.     On the call, Defendant Koenig represented, "existing accounts continued to show strong pull-through, with 76% of sales in the quarter coming from utilization or reorders compared to 74% in the previous quarter." He further stated, "inventory in the channel remained steady at approximately two weeks of demand" and described the U.S. market as "very data-rich" for use in tracking orders.

52.     The Q3 2019 10-Q was signed by Defendants Garland and Dier and contained signed certifications pursuant to SOX by Defendants Garland and Dier.

53.     The Company stated in the Q3 2019 10-Q:

> We recorded an excess and obsolescence inventory charge to cost of sales of $4.1 million during the nine months ended September 30, 2019. In developing the estimate for inventory reserve, we used estimates of demand compared to shelf life. If it is determined that inventory utilization will further diminish based on estimates of demand, additional inventory write-downs may be required.

54.     In the Q3 2019 10-Q, the Company represented that Portola's operations "may be affected by a variety of factors, including the level of demand and market acceptance," and that the Company's success depended on the "degree of market acceptance" and "the willingness of physicians and healthcare organizations to change their current treatment practices" and "the willingness of hospitals and hospital systems to include our products as treatment options."

55.     The above statements identified in ¶¶29-54 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and

prospects.  Specifically, because of utilization reviews, hospitals and healthcare organizations were curtailing usage of Andexxa in order to make more efficient use of their budgets, and certain distributors were cutting back on orders of Andexxa as they were awash with inventory of Andexxa.  Because Portola recognized revenue when the product was shipped to the hospital, including the initial stocking before utilization, investors could not properly estimate rates of utilization at current hospitals.  Moreover, Portola had not established adequate reserves for returned inventory based on estimates of demand compared to shelf life.  As a result, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## VI.   THE TRUTH EMERGES

56.   On January 9, 2020, Portola was forced to admit the truth about Andexxa when it pre-announced the Company's financial results for the fourth quarter of 2019 and full year 2019 which missed consensus estimates by 30%.  Admitting it was "disappointed," the Company stated that it expected global net revenues from Andexxa to be approximately $28 million for the fourth quarter 2019 and approximately $111 million for the full year 2019.  These results were significantly below analysts' consensus estimates of $41.2 million for the fourth quarter.  The Company attributed the negatively impacted net sales of Andexxa in the fourth quarter to "flat quarter over quarter demand due to a decrease in utilization" by hospital customers "following drug utilization reviews in an effort to manage pharmacy budgets."  Portola also attributed the poor results to a $5 million reserve adjustment for "short-dated product," meaning that a substantial amount of expiring Andexxa inventory had been returned by customers.  On a conference call held that day, Defendant Garland described "reduction in reordering post utilization review" by "early adopting Tier 1 accounts, also referred to as ESP accounts."

57.   On this news, the Company's share price fell $9.98 per share to close at $14.76 per share on January 10, 2020, an approximately 40% decline.

58.   On January 14, 2020, Defendant Garland participated in an industry conference where he revealed that, in addition to the two factors disclosed in the Company's fourth quarter 2019 earnings release, Andexxa's net revenues were also impacted by "lower distributor purchases

to manage inventory" in order "to keep their inventory levels at a constant level in the fourth quarter." In doing so, Portola essentially admitted that its distributors were so overstocked with Andexxa product that they had stopped ordering new inventory or reduced their orders. Defendant Garland also explained that a typical utilization review occurs "every six to twelve months."

59. Finally, after the close of market on February 26, 2020, Portola announced its financial results for the fourth quarter and full year 2019 and held a conference call that revealed in more detail the serious problems with customers' adoption of the Andexxa drug and confirmed investors' concerns after the Company's pre-announcement of financial results last month. Specifically, Portola reported a fourth-quarter loss of $96.7 million, or a loss of $1.24 per share, compared to a loss of $88.5 million, or a loss of $1.34 per share, in the same period a year ago and analyst estimates of a loss of $0.88 per share. Portola disclosed that its outsize loss for the quarter encompassed a $27.5 million charge arising from its decision to discontinue operations related to the Bevyxxa drug, a secondary product of the Company. On a conference call held that day, Defendant Garland revealed that the Company was forced to cease Bevyxxa commercialization efforts and undertake an internal restructuring in order to focus its efforts on handling the problems surrounding its primary product, Andexxa.

60. On this news, the Company's share price fell $2.35 per share to close at $10.17 per share on February 27, 2020, an approximately 19% decline.

## VII.   LOSS CAUSATION

61. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Portola's common stock and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Portola's stock fell precipitously as the prior artificial inflation came out of the price over time. As a result of their purchases of Portola's stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## VIII.   CLASS ACTION ALLEGATIONS

62.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of Portola during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Portola and their families and affiliates.

63.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of November 1, 2019, Portola had over 77 million shares of common stock outstanding, owned by hundreds or thousands of investors.

64.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Securities Act and/or Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendant Koenig and the Offering Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Portola common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

65.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

66.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## IX.     INAPPLICABILITY OF STATUTORY SAFE HARBOR

68.     Portola's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

69.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Portola who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## X.     PRESUMPTION OF RELIANCE

70.     At all relevant times, the market for Portola's common stock was an efficient market for the following reasons, among others:

(a)     Portola common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Portola filed periodic public reports with the SEC and the NASDAQ;

(c)     Portola regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Portola was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

71.    As a result of the foregoing, the market for Portola common stock promptly digested current information regarding Portola from all publicly available sources and reflected such information in the price of Portola common stock.  Under these circumstances, all purchasers of Portola common stock during the Class Period suffered similar injury through their purchase of Portola common stock at artificially inflated prices and the presumption of reliance applies.

72.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v.  United States*, 406 U.S.  128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the utilization and adoption of Andexxa—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of hospital customers' and other institutions' utilization and adoption of Andexxa, that requirement is satisfied here.

## COUNT I

### For Violations of Section 11 of the Securities Act
### Against Portola and the Offering Defendants

73.    Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

74.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Class who purchased or otherwise acquired Portola common stock sold pursuant or traceable to the Offering, and who were damaged thereby.

75.    This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict

liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiff does not allege Defendants acted with scienter or fraudulent intent, which are not elements of a Section 11 claim.

76.     Portola is the registrant for the Offering.  The Defendants were responsible for the contents and dissemination of the Offering Materials.

77.     As the issuer of the shares, Portola is strictly liable for the misstatements and omissions.

78.     Liability under this Count is predicated on the Offering Defendants' signing of the Registration Statement for the Offering and Portola and the Offering Defendants' participation in the Offering, which was conducted pursuant to the Offering Materials.  The Offering Materials were false and misleading, contained untrue statements of material facts, omitted to state facts necessary to make the statements not misleading, and omitted to state material facts required to be stated therein.

79.     The value of Portola common stock has declined substantially after and as a result of Defendants' violations, causing damage to those members of the Class that purchased shares on or traceable to the Offering.

80.     Less than one year has elapsed since the time that Plaintiff discovered, or could reasonably have discovered, the facts upon which this Complaint is based.  Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

81.     By reason of the foregoing, Defendants are each jointly and severally liable for violations of Section 11 of the Securities Act pursuant to Section 11(e).

<u>**COUNT II**</u>

<u>**For Violations of Section 12(a)(2) of the Securities Act**</u>
<u>**Against Portola and the Officer Defendants**</u>

82.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

83.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C.

§ 77l(a)(2), on behalf of all members of the Class who purchased or otherwise acquired Portola common stock in and/or traceable to the Offering, and who were damaged thereby.

84.     This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiff does not allege that Portola or the Officer Defendants acted with scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

85.     The Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

86.     Less than one year has elapsed since the time that Plaintiff discovered, or could reasonably have discovered, the facts upon which this Complaint is based.  Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

87.     By reason of the foregoing, Portola and the Officer Defendants are liable for violations of Section 12(a)(2) of the Securities Act.

### COUNT III

#### For Violations of Section 15 of the Securities Act
#### Against the Offering Defendants

88.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

89.     This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of all members of the Class who purchased or otherwise acquired Portola common stock in and/or traceable to the Offering, and who were damaged thereby.

90.     This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiff does not allege that Defendants acted with scienter or fraudulent intent, which are not elements of

a Section 15 claim.

91.     As set forth in Count One above, Portola is strictly liable under Section 11 of the Securities Act for untrue statements and omissions of material fact in the Offering Materials.

92.     The Offering Defendants, by virtue of their positions and/or specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Portola within the meaning of Section 15 of the Securities Act.  These defendants also had the power and influence, and exercised the same, to cause Portola to engage in the acts described herein, including by causing Portola to conduct the Offering pursuant to the Offering Materials.  The Company, meanwhile, controlled the Offering Defendants and all of its employees.

93.     By reason of the foregoing, the Offering Defendants each were culpable participants in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on their having signed or authorized the signing of the Registration Statement and/or having otherwise participated in the process that allowed the Offering to be successfully completed.  The Offering Defendants are liable for the aforesaid wrongful conduct and are liable, to the same extent that Portola is liable under Section 11 of the Securities Act, to members of the Class who purchased or otherwise acquired Portola common stock sold pursuant or traceable to the Offering, and who were damaged thereby.

## COUNT IV

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against Portola and the Officer Defendants

94.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

95.     During the Class Period, Portola and the Officer Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Portola common stock at artificially inflated prices.

96.     Portola and the Officer Defendants: (i) employed devices, schemes, and artifices to

defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Portola common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

97.     Portola and the Officer Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

98.     During the Class Period, Portola and the Officer Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

99.     Portola and the Officer Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them.  Portola and the Officer Defendants engaged in this misconduct to conceal Portola's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

100.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Portola's common stock.  Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all, had they been aware that the market prices for Portola's common stock had been artificially inflated by Defendants' fraudulent course of conduct.

101.     As a direct and proximate result of Portola's and the Officer Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

102.     By virtue of the foregoing, Portola and the Officer Defendants violated Section

10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

**COUNT V**

**For Violations of Section 20(a) of the Exchange Act**
**Against the Officer Defendants**

103. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

104. The Officer Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Portola, the Officer Defendants had the power and ability to control the actions of Portola and its employees. By reason of such conduct, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XIII.   PRAYER FOR RELIEF

105. WHEREFORE, Plaintiff prays for judgment as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d) Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XIV.   JURY DEMAND

106. Plaintiff demands a trial by jury.

DATED: February 28, 2020

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel:    (310) 819-3470

-and-

HANNAH ROSS
(hannah@blbglaw.com)
AVI JOSEFSON
(avi@blbglaw.com)
MICHAEL D. BLATCHLEY
(michaelb@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Plaintiff Southeastern Pennsylvania Transportation Authority*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Gino Benedetti, on behalf of Southeastern Pennsylvania Transportation Authority ("SEPTA"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the General Counsel of SEPTA. I have reviewed the complaint and authorize its filing.

2. SEPTA did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. SEPTA is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. SEPTA's transactions in the Portola Pharmaceuticals, Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. SEPTA has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *Atul Singh Deora v. NantHealth, Inc.*, No. 17-cv-1825 (C.D. Cal.)

6. SEPTA has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

    *In re Chicago Bridge & Iron Company N.V. Securities Litigation*,
    No. 17-cv-1580 (S.D.N.Y.)
    *Nikolov v. Livent Corporation*, No. 19-cv-2218 (E.D. Pa.)

7. SEPTA is currently seeking to serve as a lead plaintiff and representative party on behalf of a class in the following actions filed under the federal securities laws during the three years preceding the date of this Certification:

    *Allegheny County Employees' Retirement System v. Karyopharm Therapeutics Inc.*, No. 19-cv-11597 (D. Mass.)
    *City of Birmingham Firemen's and Policemen's Supplemental Pension System v. Pluralsight, Inc.*, No. 19-cv-128 (D. Utah)

8. SEPTA will not accept any payment for serving as a representative party on behalf of the Class beyond SEPTA's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28 day of February 2020.


Gino Benedetti
General Counsel
*Southeastern Pennsylvania Transportation Authority*

**Southeastern Pennsylvania Transportation Authority**
**Transactions in Portola Pharmaceuticals, Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 2/21/2019 | 2,610 | 30.1815 |
| Purchase | 2/22/2019 | 1,390 | 30.8045 |
| Purchase | 2/25/2019 | 1,060 | 31.4053 |
| Purchase | 3/1/2019 | 2,050 | 33.7222 |
| Purchase | 3/29/2019 | 1,850 | 34.5609 |
| Purchase | 4/1/2019 | 890 | 35.4958 |
| Purchase | 4/2/2019 | 460 | 36.1262 |
| Purchase | 4/3/2019 | 1,710 | 37.4868 |
| Sale | 1/10/2020 | (12,020) | 14.0026 |